**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Management Technology Development Group, Inc. | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | [Judge] |
| The Nielsen Company (US), LLC | ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Management Technology Development Group, Inc. (MTD Group) for its complaint against Defendant The Nielsen Company (US), LLC (Nielsen) states as follows:

**SUMMARY OF CASE**

1.     This is an action for damages and injunctive relief to remedy Nielsen's misappropriation of MTD Group's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. 1839(3) ("DTSA"), violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. ("ITSA"), breach of contract, conversion, tortious interference with prospective business advantage, and fraud.

**PARTIES**

2.     MTD Group is an Illinois corporation with a principal place of business in Homer Glen, IL 60491.

3.     Upon information and belief, Nielsen is a Delaware limited liability company with its principal office located at 770 Broadway, New York, New York 10003, and a regional office at 200 West Jackson Boulevard, Chicago, IL 60606.

## JURISDICTION AND VENUE

4.     This Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367(a), as the claims at issue are so closely related that they form part of the same case or controversy.

5.     Nielsen is subject to personal jurisdiction in this Court by virtue of, among other things, it having a regional office in Illinois, doing business in Illinois, causing harm in Illinois by acts or omissions done both inside and outside of Illinois, entering into valid and enforceable Illinois contracts out of which this litigation arose, and a valid and enforceable venue selection clause.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) as Nielsen has a place of business in this district, and a substantial part of the transactions giving rise to this claim occurred in this district. The trade secret property at issue exists in this district, where Nielsen resides and conducts business. Acts of Nielsen's have occurred in this district, and the injury complained of is being inflicted in this district.

7.     Jurisdiction and venue are also proper in this Court as to Nielsen pursuant to a valid governing law clause contained in the "Mutual Alliance Agreement," (the "Agreement") attached hereto as Exhibit A, entered into between MTD Group and Nielsen, attached hereto as Exhibit A. This governing law provision states, in relevant part: "This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois as such laws apply to contracts between Illinois residents performed entirely within Illinois. Any disputes under this Agreement may be brought in the state courts and the Federal courts, Illinois, and the parties hereby consent to the personal jurisdiction and venue of these courts."

## BACKGROUND

8.     MTD Group is a family-owned business specializing in perishable products sold in supermarkets, club stores, and supercenters throughout the United States.

9.     MTD Group is the market leader in tracking perishable products sold across the United States and has been since its founder, Francis Pellettiere, began tracking these perishable goods in 1971.

10.    In 1996, upon recognizing the shortcomings of large providers such as Nielsen, MTD Group revolutionized the industry with its proprietary technologies for tracking random weight products, measuring effectiveness of promotions, identifying product opportunities, creating and monitoring category plans, and measuring market shares.

11.    Prior to this time, providers received raw data on perishable items directly from customers but were unable to combine raw data into a single, unified database.

12.    One problem others faced is perishable products do not include fixed weights or Uniform Product Codes (UPCs) and each retailer uses different codes for these perishable products.

13.    Creating a single, unified database (syndicated database) like what is available for fixed-weight, UPC coded items requires a completely different and unique set of processes, coding and software.

14.    MTD Group, through its years of innovations, developed proprietary know-how, coding methodologies, products and services (collectively, the "Confidential Information").

15.     MTD Group's Confidential Information is essential to the success and continued success of MTD Group. It represents the investment, at minimum, of millions of dollars in time and expense.

16.     MTD Group has invested considerable time, effort, and expense in establishing and developing the Confidential Information, and in developing contacts and business relationships with its customers and potential customers.

17.     The Confidential Information gives MTD Group a competitive advantage not enjoyed by other persons who do not possess the Confidential Information. It is not generally known outside MTD Group, and access to items of Confidential Information is limited to select groups of individuals.

18.     The Confidential Information would be extremely difficult to independently develop or create, if even possible at all. It cannot be acquired from MTD Group.

19.     MTD Group has developed this information at considerable cost and expense over a period of years. It would require, at a minimum, many years, and considerable time and expense, to recreate even a portion of MTD Group's Confidential Information through lawful means.

20.     MTD Group's success in this highly competitive business is dependent upon a number of factors, including the Confidential Information that MTD Group has developed over the years through the expenditure of substantial time and resources.

21.     The Confidential Information derives independent economic value from not being generally known or readily ascertainable by proper means by others  who could obtain economic value from its disclosure and use.

22.     Nielsen offered, and continues to offer, a competing product to MTD Group's Confidential Information called Answers on Demand ("AOD").

23.     Nielsen was unable to replicate MTD Group's Confidential Information and was unable to achieve anywhere near the same accuracy and results as MTD Group.

24. MTD Group's Confidential Information provided such a large competitive advantage that Nielsen reached out to MTD Group with a proposed business agreement that resulted in the Agreement.

25. Former Vice President of Nielsen's U.S. Operations, David Stout, stated that he was "humbled" by how much better MTD Group's Confidential Information performed in comparison with Nielsen's AOD product.

26. On or about May 24, 2013, Nielsen signed the Agreement.

27. Under the Agreement, Nielsen agreed to work with MTD Group so that MTD Group could utilize its Confidential Information to process raw data for Nielsen's "Fresh Facts" product.

28. Among other things, Nielsen agreed that MTD Group would continue to own all rights, title, and interest, including intellectual property rights, in and to any MTD Group data coding and methodologies, or other intellectual property, in existence prior to the MAA or created or acquired solely by or on behalf of MTD Group in order to fulfill its obligations under the MAA. (Agreement, §§ III (i)-(ii) and V(5).)

29. Nielsen also agreed to "not, directly or indirectly, separate from the Work Product any MTD Materials that may be imbedded in the Work Product and/or use it separate from the Work Product for any purpose." (*Id.* § III (iii).)

30. The Agreement also required that Nielsen (1) retain MTD Group's confidential data coding and methodologies, or other confidential information, in confidence, (2) only use MTD Group's confidential data coding and methodologies to carry out the business relationship with MTD Group, (3) will not make, use, or sell any product or item using, incorporating, or derived from MTD Group's confidential data coding and methodologies, and

(4) will not modify, reverse engineer, decompile, create other works from, or disassemble any software programs or coding methodologies contained in  MTD Group's confidential information. (*Id.* §§ V (1)-(2), (5)-(6), (16).)

31.     Nielsen and MTD Group extended the Agreement four times so that it lasted through December 31, 2018 as shown in the Contract and Extension Summary attached as Exhibit B.

**Nielsen Misappropriates MTD Group's**
**Confidential Information, Breaches the Agreement, Converts MTD Group's**
**Confidential Information, and Fraudulently Induces MTD Group to Extend the Agreement**

32.     Upon information and belief, Nielsen misappropriated the Confidential Information and has incorporated it into its own Answers on Demand ("AOD") product and services in violation of the Mutual Alliance Agreement.

33.     Upon information and belief, Nielsen realized that MTD Group's Confidential Information far exceeded the AOD product, saw its enormous value and market potential and schemed to take the Confidential Information for itself.

34.     To execute its scheme, Nielsen then fraudulently induced MTD Group to extend the Agreement so that it could learn how MTD Group's Technology worked under the guise of continuing a business relationship, while reverse engineering MTD Group's Confidential Information without MTD Group's authorization.

35.     In or about 2017, MTD Group became aware of Nielsen comparing MTD Group's Confidential Information with its own AOD coding.

36.     Nielsen has reverse engineered or attempted to reverse engineer MTD Group's Technology, including its proprietary coding and methodologies, and has incorporated such into Nielsen's own AOD product.

37.     Upon information and belief, Nielsen has made, used, sold, or offered to sell the AOD product containing MTD Group's Confidential Information.

38.     In or about 2017, Nielsen provided MTD Group with a computer file showing how the Fresh Facts database is linked to the AOD database and how Nielsen made unauthorized use of MTD Group's Confidential Information.

39.     Nielsen stated that it used this file to identify items missing from the AOD database and to fix the AOD database's historic issues with missing information.

40.     On several occasions, including at meetings in Nielsen's Schaumburg office, Nielsen employees have stated that Nielsen was utilizing or has used MTD Group's Confidential Information to improve the AOD product and correct its problems.

41.     When questioned about its unauthorized use of the Confidential Information, Nielsen denied the use and extended the Agreement.

42.     Upon information and belief, Nielsen has misappropriated MTD Group's trade secrets through linking into the Fresh Facts databases populated by and with MTD Group's Materials and extracted MTD Group's Confidential Information to identify and fix AOD coding problems.

43.     Upon information and belief, Nielsen has misappropriated MTD Group's trade secrets through linking into the Fresh Facts databases populated by and with MTD Group's Materials and extracted branding coding and methodologies to identify and fix well documented AOD problems with branded items.

44.     Upon information and belief, Nielsen has misappropriated MTD Group's trade secrets through extracting MTD Group's Confidential Information to correct the placement of AOD items into correct departments.

45. Upon information and belief, Nielsen has misappropriated MTD Group's trade secrets through extracting other MTD Group Materials and imported the MTD Group Materials into the AOD product.

46. Upon information and belief, Nielsen has secured lucrative contracts with Smithfield, Walmart, and others as a result of incorporating MTD Group's Confidential Information into the competing AOD product.

47. Nielsen's acquisition and use of MTD Group's Confidential Information is in violation of the Agreement.

48. Upon information and belief Nielsen extended the Agreement through December 31, 2018 with the intent that it would not keep the promises in the Agreement.

49. Upon information and belief Nielsen extended the Agreement through December 31, 2018 under the pretense of continuing its business relationship with MTD Group, while having the intent to incorporate MTD Group's Confidential Information into Nielsen's competing AOD product in direct and knowing violation of the Agreement.

50. Once Nielsen added MTD Group's Confidential Information to the AOD product, it sent a cancellation of the Agreement to MTD Group on or about November 6, 2018, attached as Exhibit C.

51. MTD Group used, and continues to use, reasonable and diligent efforts to maintain and protect its Confidential Information, including (a) limiting access to certain databases on its computer systems to certain employees, (b) limiting access to its computer system on a password protected basis, (c) limiting access to who can view Confidential Information, (d) having a specific policy regarding the non-disclosure of confidential business

information, and (e) requiring employees who learn or have access to Confidential Information to sign a non-disclosure/confidentiality agreement.

52.     By acquiring, selling and utilizing MTD Group's Confidential Information without MTD Group's consent or authorization, and in violation of its duty to maintain the secrecy of the same, Nielsen has misappropriated MTD Group's Confidential Information.

53.     Nielsen has and will continue to use MTD Group's Confidential Information to divert business away from MTD Group and otherwise unlawfully compete with MTD Group.

54.     MTD Group has suffered and will continue to suffer harm from the misappropriation of its Confidential Information. The amount of damage it will incur from the misappropriation is difficult to ascertain, and is likely to be irreparable.

55.     MTD Group demanded return of its documents and Confidential Information that is not used in work product in conformance with the use restrictions in the agreement.

56.     Nielsen has not returned the MTD Groups documents and Confidential Information.

57.     Section V(5) of the Agreement explicitly requires that:

Upon termination or expiration of the Agreement, or upon written request of the other party, each party shall promptly return to the other all documents and other tangible materials representing the other's Confidential Information and all copies thereof except nothing herein shall be construed to limit Nielsen from retaining and continuing to use the Work Product as long as such use is in conformance with the use and restrictions described above.

58.     Starting at least as early as approximately 2017, Nielsen began directly soliciting the business of Smithfield, Walmart, and other potential customers and business partners of MTD Group with whom MTD Group expected to conduct business through Nielsen's AOD product.

59.    Further, Nielsen directly solicited the business of MTD Group's customers, business partners, and potential consumers or business partners in contravention of the Agreement, through Nielsen's AOD product which unlawfully includes MTD Group's Confidential Information.

60.    Nielsen's AOD product could not achieve the same results if it did not include MTD Group's Confidential information.

61.    Nielsen intentionally divert business away from MTD Group by including MTD Group's Confidential Information into a competing product.

62.    Despite being informed of MTD Group's business expectancy in its relationship with Smithfield and other current or potential customers, Nielsen has persisted in soliciting the business with Smithfield and other current or potential customers.

63.    MTD Group discovered that Nielsen fraudulently induced MTD Group to enter into extending the Agreement into December 31, 2018 under the pretense of continuing its business relationship with MTD Group, while having the intent to incorporate MTD Group's Confidential information into Nielsen's competing AOD product in direct and knowing violation of the Agreement.

64.    After extending the Agreement, Nielsen began to incorporate MTD Group's Confidential Information into its competing AOD product, and reverse engineered MTD Group's Confidential Information in violation of the Agreement.

65.    MTD Group has fully complied with its obligations under the Agreement and Nielsen has never notified MTD Group otherwise.

66.    On or about December 14, 2018, MTD Group notified Nielsen that it discovered Nielsen's fraudulent misrepresentation and material failure of consideration but Nielsen refused

and continues to refuse to restore to MTD Group, in whole or in part, the consideration provided by MTD Group.

67. During the course of the Agreement, MTD Group first learned that Nielsen's representations were false, that the MTD Group was owed substantial revenues as a result of these Nielsen's incorporation MTD Group's Confidential Information into the AOD product, and that Nielsen had fraudulently concealed its intent and these facts from MTD Group.

68. Nielsen's fraudulent misrepresentations have and continue to harm MTD Group and are the proximate cause of MTD Group's harm.

69. The Agreement contains confidentiality clauses (Section V), limiting access to who can view the Confidential Information and protected the Confidential Information to maintain its confidentially, which states that:

> Each party shall only permit access to Confidential Information of the other party to those of its employees or authorized representatives having a need to know and who have signed confidentiality agreements or are otherwise bound by confidentiality obligations at least as restrictive as those contained herein.

70. The Agreement contains a Governing Law and Venue clause (Section V (9)), which states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois as such laws apply to contracts between Illinois residents performed entirely within Illinois. Any disputes under this Agreement may be brought in the state courts and the Federal courts, Illinois, and the parties hereby consent to the personal jurisdiction and venue of these courts. This Agreement may not be amended except by a writing signed by both parties hereto.

71. The Agreement also contains an irreparable damage clause (Section V (10)), which states:

> Each party acknowledges that its breach of the Agreement will cause irreparable damage and hereby agrees that the other party shall be entitled to seek injunctive relief under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction.

72.     By acquiring, selling and utilizing MTD Group's Confidential Information without MTD Group's consent or authorization, and in violation of its duty to maintain the secrecy of the same, Nielsen has misappropriated MTD Group's Confidential Information.

73.     Nielsen has and will continue to use MTD Group's Confidential Information to divert business away from MTD Group and otherwise unlawfully compete with MTD Group.

74.     MTD Group has suffered and will continue to suffer harm from the misappropriation of its Confidential Information. The amount of damage it will incur from the misappropriation is difficult to ascertain, and is likely to be irreparable.

**Count I: Violation of Federal Defend Trade Secrets Act by Nielsen**

75.     MTD Group re-alleges and incorporates by reference paragraphs 1 through 74 of this Complaint set out above, as if fully set out herein.

76.     MTD Group's Confidential Information and trade secrets are the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the meaning of applicable law, including but not limited to within the meaning of the DTSA.

77.     The Confidential Information acquired and developed by MTD Group derives independent economic value, actual or potential, from the fact that it is not generally known to, and not readily ascertainable through proper means by, the public.

78.     MTD Group has taken reasonable measures to keep its Confidential Information secret.

79.     By reason of the foregoing, Nielsen has acquired and/or disclosed MTD Group's Confidential Information without authorization and without MTD Group's consent.

80.     Nielsen has acquired and/or disclosed MTD Group's Confidential Information in violation of its duty to maintain the secrecy of the same.

81.     By reason of the foregoing, Nielsen has willfully and maliciously misappropriated MTD Group's Confidential Information through improper means within the meaning of 18 U.S.C. § 1839(5)-(6).

82.     MTD Group has not and does not consent, either expressly or by implication, to the use or disclosure by Nielsen of any Confidential Information.

83.     DTSA allows for an award of damages for the actual loss caused by the misappropriation of trade secrets and damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss. 18 U.S.C. § 1836(3)(B).

84.     DTSA allows for an award of exemplary damages for willful and malicious misappropriation. 18 U.S.C. § 1836(3)(C).

85.     DTSA allows for injunctive relief to prevent any actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(3)(A).

86.     MTD Group is being or will be harmed through the misappropriation of its Confidential Information and trade secrets. The exact amount of the harm will be difficult, if not impossible, to ascertain, and this harm is likely to be irreparable.

87.     The harm which MTD Group will suffer if Nielsen is not enjoined far outweighs any harm Nielsen would suffer from the issuance of injunctive relief.

88.     Nielsen consented to MTD Group receiving injunctive relief due to Nielsen's breach of the Agreement.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.      A preliminary and permanent injunction prohibiting Nielsen and all those acting in concert with it from using or disclosing to any person any Confidential Information and trade secrets of MTD Group and from continuing to breach the Agreement.

B.      An award of MTD Group's actual damages for the misappropriation of Confidential Information and trade secrets.

C.      Nielsen be ordered to immediately preserve and return to MTD Group any Confidential Information of MTD Group, and all copies thereof, in whatever form stored or maintained.

D.      MTD Group be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MTD Group or reaped by Nielsen and/or Nielsen's parent companies, assignees, or successors in interest; an accounting as to all persons to whom the Confidential Information and trade secrets, or any portion thereof has been disclosed by Nielsen; and an award of attorney's fees.

### Count II: Violation of Illinois Trade Secrets Act by Nielsen

89.      MTD Group re-alleges and incorporates by reference paragraphs 1 through 88 of MTD Group's Complaint set out above, as if fully set out herein.

90.      MTD Group's Confidential Information and trade secrets are the result of years of work and substantial expenditure of time, effort and expense and constitutes trade secrets within the meaning of applicable law, including but not limited to within the meaning of the ITSA.

91.     The Confidential Information and trade secrets acquired and developed by MTD Group is sufficiently secret as to derive independent economic value, actual or potential, from the fact that they are not generally known to others who can obtain economic value from their disclosure or use.

92.     MTD Group has taken reasonable measures to keep its Confidential Information and trade secret information secret.

93.     By reason of the foregoing, Nielsen has acquired and/or disclosed MTD Group's Confidential Information and trade secrets without authorization and without MTD Group's consent.

94.     Nielsen has acquired and/or disclosed MTD Group's Confidential Information and trade secrets in violation of its duty to maintain the secrecy of the same.

95.     By reason of the foregoing, Nielsen has willfully and maliciously misappropriated MTD Group's Confidential Information and trade secrets through improper means within the meaning of 765 ILCS 1065/2.

96.     MTD Group has not and does not consent, either expressly or by implication, to the use or disclosure by Nielsen of any Confidential Information or trade secrets.

97.     ITSA allows for an award of damages for the actual loss caused by the misappropriation of trade secrets and damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss. 765 ILCS 1065/4(a).

98.     ITSA allows for an award of exemplary damages for willful and malicious misappropriation. 765 ILCS 1065/4(b).

99.     ITSA allows for an award of reasonable attorney's fees if willful and malicious misappropriation exists. 765 ILCS 1065/5.

100.    ITSA allows for injunctive relief to prevent any actual or threatened misappropriation of trade secrets. 765 ILCS 1065/3.

101.    MTD Group is being or will be harmed through the misappropriation of its Confidential Information and trade secrets. The exact amount of the harm will be difficult, if not impossible, to ascertain, and this harm is likely to be irreparable.

102.    The harm which MTD Group will suffer if Nielsen is not enjoined far outweighs any harm Nielsen would suffer from the issuance of injunctive relief.

103.    Nielsen consented to MTD Group receiving injunctive relief due to Nielsen's breach of the Agreement.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.      A preliminary and permanent injunction prohibiting Nielsen and all those acting in concert with it from using or disclosing to any person any Confidential Information and trade secrets of MTD Group and from continuing to breach the Agreements.

B.      An award of MTD Group's actual damages for the misappropriation of Confidential Information and trade secrets.

C.      Nielsen be ordered to immediately preserve and return to MTD Group any Confidential Information of MTD Group, and all copies thereof, in whatever form stored or maintained.

D.      An award of reasonable attorney's fees pursuant to 765 ILCS 1065/5.

E.     MTD Group be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MTD Group or reaped by Nielsen and/or its parent companies, assignees, or successors in interest, and accounting as to all persons to whom the Confidential Information and trade secrets, or any portion thereof has been disclosed by Nielsen.

<strong>Count III: Breach of Contract by Nielsen.</strong>

104.     MTD Group re-alleges and incorporates by reference paragraphs 1 through 103 of MTD Group's Complaint set out above, as if fully set out herein.

105.     The foregoing actions by Nielsen are continuing breaches of the Agreement.

106.     MTD Group has no adequate remedy at law and is suffering irreparable injury for Nielsen's breach of the Agreement.

107.     MTD Group has fully performed all of its material obligations under the Agreement.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.     A preliminary and permanent injunction prohibiting Nielsen and those acting in concert with it from continuing to breach the Invention, Conflict of Interest, Confidentiality Policy and Agreement.

B.     An award of MTD Group's actual damages for breach of the Agreement.

C.     MTD Group be granted such other and further relief as the Court may deem just and proper.

**Count IV: Conversion by Nielsen.**

108.    MTD Group re-alleges and incorporates by reference paragraphs 1 through 107 of MTD Group's Complaint set out above, as if fully set out herein.

109.    MTD Group has a right to immediate possession of any of MTD's Group Confidential Information, documents, and materials in Nielsen's possession.

110.    Nielsen has assumed control, dominion and ownership over MTD's Group Confidential Information, documents, and materials to which MTD Group has an absolute and unconditional right to immediate possession.

111.    Nielsen has not returned or has destroyed MTD Group's Confidential Information, documents, and materials that rightfully belong to MTD Group.

112.    Nielsen's conduct was and is deliberate, willful and malicious.

113.    The foregoing conduct has proximately caused and, unless restrained and enjoined, will continue to cause MTD Group severe, immediate and irreparable harm, damage and injury.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.    A preliminary and permanent injunction prohibiting Nielsen and those acting in concert with it from continuing to breach the Agreement.

B.    A preliminary and permanent injunction prohibiting Nielsen from using or disclosing MTD Group's Confidential Information.

C.    Mandatory injunction to compel Nielsen to return all of MTD Group's Confidential Information and all other proprietary information and property belonging to MTD Group.

D.    Compensatory damages in an amount to be determined at trial.

E.    Punitive damages.

D.    MTD Group be granted such other and further relief as the Court may deem just and proper.

**Count V: Tortious Interference with Prospective Business Advantage by Nielsen.**

114.    MTD Group re-alleges and incorporates by reference paragraphs 1 through 114 of MTD Group's Complaint set out above, as if fully set out herein.

115.    MTD Group has a valid business expectancy in relationships with its potential customers and business partners through the expenditure of substantial time, money and effort. Further, MTD Group has a valid business expectancy in such relationships with potential customers and business partners due to MTD Group's Confidential Information.

116.    As a result of the Agreement, Nielsen has knowledge of MTD Group's business expectancy in such relationships with potential customers and business partners due to the fact that Nielsen has and continues to access MTD Group's Confidential Information.

117.    Nielsen has intentionally and unjustifiably interfered with MTD Group's business expectancies by soliciting potential customers of MTD Group and attempting to divert customers from MTD Group.

118.    Specifically, and without limitation, Nielsen's actions have interfered with MTD Group's business expectancy in that MTD Group has now been unable to obtain business from customers as expected.

119.    Nielsen's actions are not privileged because Nielsen solicited the business of customers with a competing product that includes MTD Group's Confidential Information and in competition with MTD Group in contravention of the Agreement. Moreover, Nielsen has

used unfair means to interfere with MTD Group's relationship with customers, including the disparagement of MTD Group's goods, services and reputation.

120.     As a direct and proximate result of Nielsen's actions, MTD Group has sustained, and will continue to sustain, unless enjoined, severe and irreparable injury to its customer business expectancies and relationships.

121.     By reason of Nielsen's deliberate, willful and malicious conduct, MTD Group is entitled to exemplary damages in such amount as the public good requires to punish Nielsen and to deter them and others from the commission of like acts.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.     A preliminary and permanent injunction prohibiting Nielsen from interfering with MTD Group's business expectancies and relationships.

F.     Compensatory damages in an amount to be determined at trial.

G.     Punitive damages.

E.     MTD Group be granted such other and further relief as the Court may deem just and proper.

**Count VI: Fraud by Nielsen.**

122.     MTD Group re-alleges and incorporates by reference paragraphs 1 through 121 of MTD Group's Complaint set out above, as if fully set out herein.

123.     Each of the representations and assurances made by Nielsen to and at the time MTD Group executed extensions to the Agreement as alleged above, were in fact false.

124.     Nielsen never intended to meet its obligations under the Agreement.

125.     At the time these representations and assurances were made on behalf of Nielsen, at the time MTD Group executed extensions to the Amendment, and at the time MTD Group rendered its performance under the Agreement, MTD Group did not know that the representations were false but believed them to be true and reasonably relied on them. Had MTD Group known that the representations were not true, MTD Group would not have entered into extensions to the Agreement and would not have rendered or accepted performance thereunder.

126.     The consideration promised to MTD Group by Nielsen has failed in material respect due to Nielsen's failure to abide by its promise in the Agreement to not directly or indirectly, separate MTD Group's Confidential Information or use it for any unauthorized purpose.

127.     As a result, there has been a material failure of the consideration promised to MTD Group by Nielsen.

128.     MTD Group has performed all the obligations required of it to be performed under the Agreement.

129.     MTD Group has suffered and will continue to suffer substantial harm and injury as a result of Nielsen's misrepresentations.

130.     Nielsen refused and continues to refuse to restore to MTD Group, in whole or in part, the consideration provided by MTD Group.

131.     As a result of Nielsen's fraudulent misrepresentations and omissions, MTD Group has incurred damages, including, without limitation, lost business opportunities, lost profits, litigation expenses and attorneys' fees. The exact amount of these damages is presently unknown but will be proven at trial.

132.     In performing the acts herein alleged, Nielsen maliciously and intentionally misrepresented to or concealed from MTD Group material facts known to Nielsen as alleged above, with the intention on the part of Nielsen of depriving MTD Group of its rights in its Confidential Information and the revenues it was entitled to derive therefrom.

**WHEREFORE**, Plaintiff MTD Group prays for all appropriate relief against Defendant Nielsen, including:

A.     A preliminary and permanent injunction prohibiting Nielsen and all those acting in concert with it from using or disclosing to any person any Confidential Information and trade secrets of MTD Group and from continuing to breach the Agreements.

B.     An award of MTD's actual damages for the harm suffered by MTD Group for the fraudulent inducement by Nielsen in extending the Agreement.

C.     Nielsen be ordered to immediately preserve and return to MTD Group any Confidential Information of MTD, and all copies thereof, in whatever form stored or maintained.

D.     MTD Group be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an equitable accounting for all profits lost by MTD Group or reaped by Nielsen and/or Nielsen's parent companies, assignees, or successors in interest, an accounting as to all persons to whom the Confidential Information and trade secrets, or any portion thereof has been disclosed by Nielsen, and an award of attorney's fees.

Dated:  July 3, 2019                          Respectfully submitted,

                                              Management Technology Development Group, Inc.


                                              By:  /s/ Jacob D. Radecki
                                                      One of its Attorneys


                                              Michael J. Hayes (Bar No. 1161725)
                                              Aronberg Goldgehn
                                              330 N. Wabash Ave., Ste. 1700
                                               Chicago, Illinois 60611
                                              t 312.828.9600 │ f 312.828.9635
                                              MHayes@agdglaw.com

                                              Mark Guinto (OH 0089320)
                                              MCDONALD HOPKINS LLC
                                              600 Superior Avenue, East, Ste. 2100
                                              Cleveland, Ohio 44114
                                              t 216.348.5400 │ f 216.348.5474
                                              mguinto@mcdonaldhopkins.com

                                              Jacob D. Radecki (Bar No. 6321345)
                                              MCDONALD HOPKINS LLC
                                              300 N. LaSalle, Suite 1400
                                              Chicago, Illinois 60654
                                              t 312.280.0111 │ f 312.280.8232
                                              jradecki@mcdonaldhopkins.com

## **Jury Demand**

Plaintiff Management Technology Development Group, Inc. hereby demands a jury trial for all issues so triable.

/s/ Jacob D. Radecki
*Counsel for the Plaintiff*